Merritt *et al. v.* Gibson *et al.*

Judgment reversed, with instructions to the circuit court to overrule the motion to quash the indictment.

Filed Sept. 23, 1891.

No. 15,920.

## MERRITT ET AL. *v.* GIBSON ET AL.

MORTGAGE.—*Foreclosure.—Inadequacy of Security.—Rents and Profits During Year for Redemption.—Receiver.*—Where lands are sold at a mortgage foreclosure sale, and the mortgage creditor is the purchaser, if he shows that the mortgaged lands are inadequate to secure the debt, that the debtor is insolvent, and that the lands, or a material part of them, are in the actual occupancy of tenants who are to pay rent therefor by a share of such crops as they raise thereon, or otherwise, a court of equity may appoint a receiver to collect the rents and profits accruing from that portion of such lands as are occupied by tenants, and hold them to the expiration of the year allowed for redemption, subject to the order of the court, to be paid to the debtor, if he redeems, or to the mortgage creditor, if the debtor does not redeem. Elliott, J., and Miller, J., dissent.

SAME.—*Redemption.—Receiver.—Statutes.*—For a consideration of section 767, R. S. 1881, providing for the redemption of lands from judicial sales, and clause seven of section 1222, R. S. 1881, relating to the appointment of receivers during the time allowed for redemption, see opinion.

From the Switzerland Circuit Court.

*C. E. Walker*, for appellants.

*F. M. Griffith, W. D. Ward* and *J. A. Vanosdol*, for appellees.

MCBRIDE, J.—The question we are required to decide in this case is: When a mortgage on land has been foreclosed, and the mortgaged land sold to the mortgage creditor on the decretal order, is he entitled, as against the owner of the equity of redemption, to the appointment of a receiver to take

charge of such land, and collect and hold, subject to the order of the court, rents and profits accruing thereon during the year allowed for redemption thereof, on showing inadequacy of the security and insolvency of the debtor?

Appellant Adolphus E. Merritt owned, and, with his wife and co-appellant, Zora Merritt, mortgaged to appellee seven hundred and seventy-two acres of land in Switzerland county to secure the payment of a debt of $18,000. August 21st, 1890, appellee brought suit in the Switzerland Circuit Court against appellants and others to recover judgment on the debt and to foreclose the mortgage.

The complaint alleged the insolvency of the debtor and insufficiency of the security, and asked for the appointment of a receiver.

Such proceedings were afterward had that on the 22d day of September, 1890, said court rendered judgment in said cause against appellant Adolphus E. in favor of appellee for $21,541, and costs, and rendered a decree foreclosing said mortgage as against both, with others joined as defendants. The court at the same time made an order continuing the matter of the application for the appointment of a receiver until the next term of said court.

October 30th, 1890, an order of sale was issued on said decree to the sheriff of Switzerland county, who, after due notice, sold said land under said decree on the 6th day of December, 1890, the appellee and mortgage creditor becoming the purchaser, and paying therefor $17,000.

The next term of the Switzerland Circuit Court after the rendition of said decree convened November 23d, 1890, and on the 3d day of the term appellee filed in said court her written motion renewing her application for the appointment of a receiver, and alleging the total insolvency of the debtors; that there was due to plaintiff on said judgment the sum of $21,541.25, and costs, with accruing interest and costs ; that said mortgaged real estate was not worth to exceed $16,000,

and that by reason of the manner in which it was occupied and cultivated it was being damaged.

Appellants appeared and resisted the motion, and the court thereupon ordered the parties to file affidavits for and against said application. The matter came up for hearing December 9th, 1890, three days after the land had been sold by the sheriff, and a large number of affidavits were presented by each party. From the affidavits filed it is shown that the land consists of several tracts, and that of the seven hundred and seventy-two acres about four hundred acres are cleared and cultivated, and the residue is pasture land ; that it is occupied by the appellants and twelve tenants, the appellants having their residence on one of the tracts and cultivating a part of the land, and the tenants each residing on and cultivating a small tract, principally in tobacco, for a share of the crop. The estimates of the value of the land vary from $16,000 to $30,000, and the annual rental value is shown to be $1,800 to $2,000.

The court appointed a receiver to " take charge of, protect and preserve during the time allowed for redemption the real estate described in said mortgage," and ordered that he " take charge of said real estate and rent the same in such manner as shall be most productive ; that the same shall be rented in such parcels as shall be most advantageous. And to fully carry out this order said defendants are ordered to deliver up to said receiver the possession of all of said real estate except the residence and appurtenant out-buildings occupied by said defendants, and so much of the adjacent real estate on said Bodkin farm as said defendants desire to cultivate themselves by their own labor, not exceeding forty acres, and of which he is now in possession as a resident."

The rents collected were to be held subject to the further order of the court.

The solution of the question thus presented depends upon the construction to be given to the statute authorizing the

redemption of lands sold on execution or decretal order, and that authorizing the appointment of receivers.

The question has never been decided under our present statutes, and in order to reach a correct solution it will be well to consider:

1st. The rule for the appointment of receivers in analogous cases prior to the enactment of statutes relating to the redemption of lands from judicial sales; and,

2d. The rule as declared by this court under the several statutes in force prior to the enactment of the present statute.

The first statute of this State providing for the redemption of lands from judicial sales was enacted in the year 1861.

Prior to the enactment of this statute the purchaser of land at judicial sale was entitled to a deed for the land and to possession at once. There was, therefore, no occasion to ask for the appointment of a receiver after sale. The purchaser could take immediate steps to enforce his right of possession under his title. Before that time, however, courts of equity, in suits for the foreclosure of mortgages, had and exercised jurisdiction in the appointment of receivers to collect the rents and profits accruing before a sale could be had.

The fourth clause of section 1222, R. S. 1881, relating to the appointment of receivers, is merely the legislative enactment of the pre-existing equity rule. *Main* v. *Ginthert*, 92 Ind. 180, citing High Receivers, 639–666; Edwards Receivers, 356; Jones Mortgages, sections 1516, 1532 and 1533. See, also, *Connelly* v. *Dickson*, 76 Ind. 440; *Bank of Ogdensburgh* v. *Arnold*, 5 Paige, 38 (3 N. Y. Chancery Reports, 617, note); *Lea Ins. Co.* v. *Stebbins*, 8 Paige, 565 (4 N. Y. Chancery Reports, 543, note); and Jones Mortgages, section 1521, and cases there cited.

In *Main* v. *Ginthert, supra,* this court said : " The juris-

Merritt *et al. v.* Gibson *et al.*

diction of courts of equity in the matters of the appointment of receivers over mortgaged property for the protection of mortgagees, or in aid of suits for the foreclosures of mortgages, is well established, and has long been exercised by such courts both in England and in this country."

Preliminary to considering the rule under the statute, we will review the legislation affecting the question.

The statute relative to the redemption of lands above referred to contained the following provision :

" The judgment debtor shall be entitled to the possession of the premises for one year after the sale, and in case they are not redeemed at the end of the year as provided in this act, he shall be liable to the purchaser for their reasonable rents and profits." 2 R. S. 1876, p. 220.

At that time the statute authorizing the appointment of receivers, in so far as it had any bearing on this question, was as follows :

"A receiver may be appointed by the court, or the judge thereof in vacation, in the following cases :

\*   \*   \*   \*   \*   \*   \*   \*   \*

"*Third.* In all actions when it is shown that the property, fund or rent and profits in controversy is in danger of being lost, removed or materially injured.

"*Fourth.* In actions by a mortgagee for the foreclosure of a mortgage, and the sale of the mortgaged property, when it appears that such property is in danger of being lost, removed or materially injured ; or, when such property is insufficient to discharge the mortgage debt, to secure the application of the rents and profits accruing before a sale. can be had.

\*   \*   \*   \*   \*   \*   \*   \*   \*

"*Sixth.* And in such other cases as may be provided by law ; or when, in the discretion of the court, it may be necessary to secure ample justice to the parties." 2 R. S. 1876, p. 114.

March 31st, 1879, the redemption law was changed, and

in lieu of the provision heretofore quoted the Legislature enacted the following:

" That whenever real estate or any interest therein shall be sold on execution, \* \* \* the owner of the property shall be entitled to the possession thereof during the time the same is subject to redemption, but if the same is not redeemed he shall be liable to the purchaser, his heirs or assigns, for the reasonable rents, profits, or use thereof: *Provided*, If such owner is not the actual occupant of the premises sold, but the same be occupied by a tenant or other person, such tenant or other person shall be liable to the purchaser for the reasonable rent or use, and occupation of the premises, and may be treated, in all respects, as the tenant of the purchaser, who shall, in case the property is redeemed, allow, as a payment upon his judgment, the amount of the rent by him collected." Acts 1879, p. 176. This statute, in so far as relates to any question involved in this case, was not substantially different from that of 1861.

April 11th, 1881, the present statute on this subject became a law, being enacted on that date with an emergency clause, and in lieu of the provisions quoted from the statutes of 1861 and 1879, we have the following:

" The owner of the real estate or interest therein, sold as aforesaid, shall be entitled to the possession of the same for one year from the date of such sale." Section 767, R. S. 1881.

The statute relating to the appointment of receivers remained unchanged from 1861 to the 7th day of April, 1881, when the present statute on that subject was enacted, and, having no emergency clause, became a law September 19th, 1881. But one change was made in this statute. Instead of clause six, above quoted, the Legislature added the following additional ground for the appointment of a receiver:

" *Sixth.* To protect or preserve, during the time allowed for redemption, any real estate or interest therein sold on execution or order of sale, and to secure to the person en-

titled thereto the rents and profits thereof." Clause six was re-enacted as clause seven.

Under the act of 1861, it was held that where it was shown that the property was in the hands of a tenant, who was under contract to pay a stipulated rent, which had not been paid to the judgment debtor, or the owner of the land, and that the latter was insolvent and could not redeem, the court might appoint a receiver to collect such rents, and to hold the same until the end of the year, if a redemption be not sooner made, to be paid to the debtor if he redeems, and otherwise to the purchaser. *Connelly* v. *Dickson, supra.* See, also, *Davis* v. *Newcomb,* 72 Ind. 413 ; *Ridgeway* v. *First Nat'l Bank,* 78 Ind. 119 ; and *Travellers Ins. Co.* v. *Brouse,* 83 Ind. 62.

It is, perhaps, but proper to say that the latter case seems to proceed on the theory that the right to the receiver depended on that provision of the statute making the judgment debtor and owner of the land liable for rents accruing during the year allowed for redemption ; it being held that, although the foreclosure was after the statute of 1881 was in force, the provisions of that statute, in regard to redemption, did not affect a contract made prior to its enactment, and while the statute of 1861 was in force.

While we decide nothing relative to the latter proposition, for the reason that the question is not involved in this case, we will remark, in passing, that, in view of the decisions of the Supreme Court of the United States, as well as two recent decisions by this court, the correctness of this ruling is probably open to question. *Connecticut Mutual Life Ins. Co.* v. *Cushman,* 108 U. S. 51. See, also, *Davis* v. *Rupe,* 114 Ind. 588, and *Robertson* v. *Vancleave, post,* p. 217.

The case of *Sheeks* v. *Klotz,* 84 Ind. 471, was decided under the act of 1879, and, while recognizing the authority of *Connelly* v. *Dickson, supra,* and the other cases cited, and

hence approving the principle governing in their decision, distinguishes between those cases and the case then before the court, and apparently holds that the possession, use, and occupancy of the premises by the owner during the year for redemption can not be interfered with by a receiver or otherwise. This is in apparent disregard of the principles recognized in *Connelly* v. *Dickson, supra.* Of the two cases of *Travellers Ins. Co.* v. *Brouse, supra,* and *Sheeks* v. *Klotz, supra,* it may be said that in the first the record is silent as to the adequacy or inadequacy of the security, and the only ground for the appointment of the receiver may have been to secure to the purchaser the rents and profits which, under the statute, were due to him if the premises were not redeemed; while in *Sheeks* v. *Klotz, supra,* while the original complaint for foreclosure alleged as a ground for the appointment of a receiver, inadequacy of the security and insolvency of the debtor, it does not appear what the property had sold for. The question was raised after sale, by motion to modify the order appointing the receiver, and for anything shown by the record, notwithstanding the averments in the original complaint for foreclosure, the land may have sold for enough to satisfy the debt; in which case there would be no appeal to an equitable principle, which we think is of controlling force here.

While the language used by the court is general in its terms, it may well have been used, and doubtless was used, with special reference to the facts then engaging the attention of the court. There is not, therefore, necessarily any conflict.

In the case now under consideration, if the appointment of the receiver can be sustained, it must be on ground other than a statutory liability to account for rents and profits during the redemption year, as the contract, the decree and the sale are all governed by the redemption law and law for the appointment of receiver of 1881, and as above shown these statutes created no such liability.

In the case of *Gale* v. *Parks,* 58 Ind. 117, it was held that, in the absence of a statute creating such liability, the judgment debtor was liable at common law to account to the purchaser at sheriff's sale for the rents and profits of land occupied by him during the year allowed for redemption, and in *Davis* v. *Newcomb, supra,* this opinion is followed; but it will be seen from an examination of *Bryson* v. *Mc-Creary,* 102 Ind. 1, and the cases there cited, that the doctrine of *Gale* v. *Parks, supra,* and of *Davis* v. *Newcomb, supra,* is questioned if not overturned.

We will assume in the decision of this case that no such liability, either statutory or otherwise, now exists in favor of a purchaser at a sheriff's sale.

Appellants suggest that the question we are required to decide is, " Who is entitled to the rents and profits of real estate sold on execution or decretal order, for one year after the day of sale; the owner, the purchaser at the sheriff's sale, or the plaintiff in the judgment?" adding that, in this case, the question arises " simply between the owner, or owners, and the purchaser at the sheriff's sale."

In this they are mistaken. No such abstract question is before us. The question here is whether or not on the precise state of facts here presented a receiver should be appointed to preserve the land from waste and to collect the rents and profits and hold them subject to the order of the court until the question of redemption or non-redemption of the land is finally settled. And the further question, · viz. : In a case where the mortgaged property, sold on a decretal order, fails to sell for enough to satisfy the debt secured, and the court finds that it is insufficient in value to satisfy that debt, who, as between the debtor and the mortgage and judgment creditor, who is also the purchaser at the sheriff's sale, is entitled to such rents and profits when the land is in the nominal possession of their debtor, but in the actual occupancy of tenants, who are to farm the land for a share of the crop raised ?

Appellants' position, as stated by them, is, in substance, that the redemption law leaves the judgment debtor in possession of the premises for one year, without regard to the value of the premises, or whether he occupies personally or by tenant; that his title remains unchanged during that time; that the possession thus left to him means a possession as owner, "a beneficial possession;" and that such a possession can not be conceived of except as entitling the possessor to the rents and profits—the beneficial use of the land. They say that "if the debtor could, on any contingency, be deprived of the use and rents of the property, his statutory possession would be a mere shadowy right. So construed the law would be an empty letter without spirit." They base their contention on the assumption that the right to a receiver in such cases depends upon the liability of the judgment debtor, retaining possession of the property sold by the sheriff to account to the purchaser at the sheriff's sale for rents and profits if he fails to redeem, and upon the ground that the statute giving the right to possession during the year being silent as to the rents and profits, the act of the Legislature in omitting the provision of the laws of 1861 and 1879 creating such liability on the part of occupying debtors is significant as indicating the legislative intent that the possession and the right to the rents and profits should not be in any manner interfered with during that year by the appointment of a receiver.

Of clause 7, or subdivision 7, of section 1222, relative to the appointment of receivers, they say that it was enacted before the enactment of the redemption law, and that in enacting that subdivision the Legislature must have had in view possible cases arising under the acts of 1861 and 1879, and could not have anticipated that it would afterward enact the redemption law. Assuming that this clause is in conflict with the redemption law, they say that the latter, being the latest enacted, must be taken as the latest expression of the legislative will, and must stand, while the

other must yield. This is undoubtedly the rule when there is irreconcilable conflict between two statutes; that latest enacted will, by implication, if not in express terms, repeal the statute first enacted *Southwark Bank* v. *Commonwealth,* 26 Pa. St. 446; *Thomas* v. *Collins,* 58 Mich. 64; *Strauss* v. *Heiss,* 48 Md. 292.

But repeals by implication are not favored, and if by fair construction the different statutes can be made to stand together the court should give to them that construction. Sutherland Stat. Con., section 138, and authorities there cited; *Coghill* v. *State,* 37 Ind. 111, and many other authorities that might be cited, all to the same effect. This is especially true of statutes enacted at the same session but on different days. They will be construed as *in pari materia,* it being presumed that harmony, and not contrariety, was the aim of the legislative body in its various enactments. Sutherland Stat. Con., section 283.

This rule has added force as applied to the legislative body which enacted both the statutes in question. We must, of course, take notice of the fact that the Legislature of 1881, aided by the labors of a commission created for that purpose, codified the statutes of the State, and that the two statutes in question were enacted as parts of the code thus framed. We think, however, that properly construed and applied there is no conflict between the two statutes.

We think the idea of conflict between the two statutes, as applied to cases of the character now before the court, grows out of a misunderstanding of the relations existing between the mortgagee and judgment creditor and purchaser on the one hand, and the occupying mortgagor and debtor on the other, and of their respective rights in the land sold, as well as a misunderstanding of the principle governing the appointment of receivers in such cases.

Appellants seem to assume that the appellee is to be treated simply as a purchaser at a sheriff's sale, without distinguishing between an execution sale and a sale on a de-

cretal order based on a decree foreclosing a mortgage. They also assume that the right to a receiver in such cases is dependent on the liability of the occupying debtor to account to the purchaser at sheriff's sale for rents and profits.

There may be cases where, upon a showing of threatened waste by the occupying debtor, greatly diminishing the value of the property, a receiver should be appointed at the instance of a purchaser at execution sale, and there may also be other cases where such appointment would be made at the suit of a purchaser at execution sale.

We do not decide this question, as we do not regard it as before us. We do decide, however, that for the mere collection and preservation of rents and profits a receiver will not be appointed under the present statute at the instance of a mere purchaser at an execution sale; and if, in this case, the rights of the appellee are only those of a purchaser at a sheriff's sale, appellants are right in their contention, and no receiver should have been appointed.

Is the appellee to be regarded as a mere purchaser at a sheriff's sale, and nothing more? If so, her rights are such as the statute gives, and no more. *Davis* v. *Rupe, supra.* The fact that the purchaser is also the judgment creditor, is said, in the case last above cited, not to affect the question, or to have any bearing on the relative rights of the parties. Of judgment creditors purchasing at their own sales, the court says that "Thenceforward their interest in the property was as purchasers at an execution sale, not as creditors."

Without inquiring as to the correctness of the rule thus laid down, or the principle upon which it is founded, we note the distinction recognized in this case as existing between the rights growing out of execution sales and sales on decretal orders.

On page 598, the writer of the opinion says: "Redemption from sales made in pursuance of decretal orders in foreclosure cases may stand upon a somewhat different basis.

Merritt *et al. v.* Gibson *et al.*

There is a sense in which a mortgagee acquires an estate or interest in the land mortgaged."

True, the writer of that opinion was discussing a different phase of the redemption law from that here involved, but we quote the language used as being a clear recognition by this court of a plain distinction between the two classes of sales, and of the rights incident to each.

In this case the application for the receiver does not come, simply from the purchaser at the sheriff's sale, but from the purchaser, who is also the mortgage and judgment creditor; who, in becoming judgment creditor and purchaser, has not ceased to be also mortgage creditor. The judgment and decretal order in such cases are simply in aid of the mortgage creditor's rights and for their enforcement. Nor did she, in becoming purchaser under her decree, lose those rights. The land had been by the debtors pledged for the payment of this debt. The sale has but partially paid it, and the question now, as before the sale, is between the mortgage creditor and the insolvent mortgage debtor, with the mortgaged property inadequate to secure the debt. Such lien upon or interest in the land as she has exists, not by virtue of the decree, but of the mortgage.

In the case of *Union Mutual Life Ins. Co.* v. *White*, 106 Ill. 67 (74), it is said : " The foreclosure and sale did not change the relation of the parties, and they were still mortgagor and mortgagees."

In the case of *Stephens* v. *Illinois Mutual Fire Ins. Co.*, 43 Ill. 327, it is said : " If it is a sale under a decree of foreclosure, the mortgagor still has the estate of a mortgagor, with this qualification, that the amount and time of redemption have become absolutely fixed by the decree and sale, and his estate will be absolutely divested if he fails to redeem within the allotted time."

If the mortgagor still has the estate of a mortgagor until the expiration of the year for redemption, it follows that

the mortgagee, during that time, still has the estate of a mortgagee.

In Wiltsie Mortgage Foreclosures, it is said: " The title and possession remain in the mortgagor until such conveyance upon sale. The interest of the mortgagee remains until then that of a mere lienor. The commencement of a foreclosure gives him no title, as his mortgage is only a security for a debt; the title and seizure remain in the mortgagor until the referee's deed upon sale is actually delivered to the purchaser." Section 11, page 10.

The lien in such cases is specific, and is created by the act of the parties. It dates from the execution of the mortgage, and not from the rendition of the decree. The decree neither creates nor declares it, but simply provides for its enforcement. The redemption statute postpones the time for the ending of the equity of redemption, and thus gives a year's additional existence to the mortgage lien. The distinction between the lien thus created and enforced and a judgment lien is at once obvious. The judgment lien is created by statute. It is not specific, but a general lien upon all property within its reach of the class designated by statute as being subject to such lien. The lien only becomes specific as to any particular property by virtue of a levy of an execution thereon. Whether the lien remains the general lien of the judgment, or becomes specific by levy, such lien still remains a creature of the statute, and the judgment creditor acquires thereby only such rights as are given him by the statute.

If it is true, then, that the appellee, in asking for the appointment of the receiver in this case after the sale under the decree, still stands before the court in the character of a mortgagee, we find ourselves on familiar ground, and the problem is easy of solution.

As has heretofore been shown, long before the enactment of redemption statutes courts of equity appointed receivers at the instance of mortgagees when the security was inade-

quate and the debtor insolvent, but such receivers were only appointed until a sale could be had, for the reason that the purchaser, being entitled to a deed and to possession at once, needed no receiver after sale. The enactment of the redemption law, postponing the creditor's right to a deed and to possession for a year, and the further enactment of the seventh clause or subdivision of section 1222, gives legislative sanction to the extension over that additional period of the power to appoint receivers in proper cases. Indeed, we are inclined to the opinion that the enactment of this clause, like the enactment of the fourth clause, was merely a legislative declaration of a power which courts of equity possessed and could have exercised independently of the statute. ·

But it is said this will render nugatory the statute giving the debtor possession and the right to redeem during an additional year.

As counsel for appellants say, " the statutory possession during that year would be a mere shadowy right, and the statute so construed would be an empty letter without spirit."

This court, in the case of *Connelly* v. *Dickson, supra,* speaking by Justice WOODS, has foreclosed discussion on this question. It is there said, after referring to the settled equity power of the court to appoint a receiver before sale : " Now, the mortgagor's right under the law to the possession of his land before the sale is not less absolute or sacred than the right given him by the later law, to continue in possession for a year after the sale, and it is not presumable that the law, by which the latter right was declared, was intended to confer a higher right of possession after the sale than the party, as owner of the title, had before the sale. * * * There is no ground for assuming that there is an implied repeal, as there is certainly no express repeal of the equity powers of the courts to interfere between the parties, for the same reasons and purposes as would justify its interposition between other parties whose relations and rights are defined by law or by contract. The fact that the rights

and obligations of the parties in such cases are declared by statute does not make them any stronger or more sacred than if the statute did not exist, and the same rights and obligations arose from a contract in each case between the parties." Page 450.

The proposition seems too plain to admit of argument that the redemption statute gives to the debtor no new or additional title or right, but simply extends for one year his existing rights, and we confess our inability to understand what incident attaches to the debtor's possession by reason of the sale, that places it beyond the reach of a court of equity.

We have found but one case outside of this State which seems to us to be in point, and entitled to weight as authority upon this particular point. This is the case of *Schreiber* v. *Carey*, 48 Wis. 208. The statute of Wisconsin, instead of allowing a year after sale for redemption, before a deed could be made, allowed a year after decree foreclosing the mortgage before sale. The same result was reached as under our statute, but by a different process. Previous to the enactment of this statute a statute was in force there similar to our statute, in that it gave a year after sale for redemption. The court says: "It is insisted by the counsel for appellant * * * that chapter 195, Laws of 1859, which secures to the mortgagor a right to redeem the lands for one year after the foreclosure sale, prevents the issuing of a deed until after the expiration of such year, and provides that the mortgagor shall remain in possession until the expiration of such year, is a clear legislative declaration that the mortgagee shall not have any benefit of the mortgaged premises under any circumstances until after the time for redemption has expired; and that the law which now prohibits any sale until one year after the judgment of foreclosure is entered, is equally conclusive of the intention to prohibit any right of possession on the part of the mortgagee until after the expiration of such year."

This sounds to us singularly like the contention in the case now under consideration. Reference was made to the case of *Finch* v. *Houghton*, 19 Wis. 150, in which case a receiver had been appointed *pendente lite,* and the court says: " It can not be said that the right of the mortgagor now to remain in possession after judgment for one year, until after the sale is made, is any more sacred than it was then to remain in possession until after judgment, and until sale made under the old law ; and yet this court held, in the case above cited, that, when equity and good conscience demanded, in order to protect the interest of the mortgagee, he might be removed from the possession before judgment and sale. If, under the law as it now is, the right of possession is inviolable in the mortgagor until after the sale made, it was equally so under the law as it stood previous to 1859. * * * That the possession is secured to the mortgagor for a longer or a shorter time, by statute, can not change the principle ; and if the right to appoint a receiver may be exercised by the court before the expiration of the shorter period fixed by the statute, it may with equal propriety be exercised before the expiration of the longer period. There is nothing, therefore, in the laws extending the time before a sale can be made upon a foreclosure judgment, which detracts from the authority of *Finch* v. *Houghton, supra.*" This case is cited approvingly in *Sales* v. *Lusk,* 60 Wis. 490.

With regard to the claim that to allow the appointment of a receiver in such cases is to deprive the statute of vital force, it seems to us that a statute which extends the right of redemption for a year, and at the same time insures to the debtor and his family a home during that time, can hardly be called an empty letter without spirit. And if the rights thus conferred are " shadowy " they are very substantial shadows.

We think it can not be justly said that by this application of clause seven of section 1222, authorizing the appointment of receivers, any right of a debtor conferred by the redemp-

tion law is destroyed or impaired. That statute simply extends the right of redemption one year, and continues during that year his right of possession.

Of this statute it may be well said, as was said by this court in *Connelly* v. *Dickson, supra,* of the statute of 1861 : " There is no ground for assuming that there is an implied repeal, as there is certainly no express repeal of the equity powers of the courts to interfere between the parties, for the same reasons and purposes as would justify its interposition between other parties whose relations are defined by law or by contract." See page 450.

While we recognize the highly remedial character of the redemption statute, and are deeply impressed with its humanity, and with the justice of the rule by which such statutes are liberally construed, we are also deeply impressed with the fact that the courts, while liberal in applying to such statutes rules of construction, are none the less required to construe them in accordance with established rules of law.

When courts of equity possess the unquestioned power in certain cases to appoint receivers to collect rents and profits of land *before sale,* as against one whose title and right of possession are both unquestioned and unquestionable, we are not aware of any rule of statutory construction which would justify us in holding that a statute which simply extended that right of possession one year after sale, and nothing more, destroyed the jurisdiction of courts of equity to interfere with that possession in similar cases after sale.

As we have heretofore said, statutes enacted at the same session as these statutes were are to be construed *in pari materia.* It will be presumed that a Legislature, engaged in a codification of the statutes of the State, intends such code to be a harmonious and congruous whole, and the fact that one particular provision of it meets with legislative sanction four days later than another, will not justify the court in construing them as separate and wholly independent legislative acts,.

especially in provisions relating to the same subject-matter, but they must be construed together.

Statutes will not only be thus construed together, but they will be construed in the light of settled rules of common law and of equity.

The whole body of statutory law, common law and equity are in our system of jurisprudence construed, as are construed the several provisions of a code, as together constituting a harmonious whole.

Every statutory enactment is construed by the light of the common law and with reference to its cognate principles, and this is true not only of the common law proper, but of established principles of equity jurisprudence ; and it will never be presumed that in the enactment of a given statute the Legislature intended to make any innovation upon the common law further than the necessity of the case required. These principles are elementary, and so fortified by authority that it is hardly necessary to cite any, but we will refer to Sutherland Statutory Construction, section 289, *et seq.*, and cases there cited.

An examination of the two statutes will show that they should be construed together, not alone for the reasons heretofore given, but because they refer to and treat of the same subject-matter.

Clause seven of section 1222, *supra*, has sole reference to the appointment of receivers during the " time allowed for redemption " of lands sold.

The one statute gives time for the redemption of lands sold, and extends the debtor's possession to cover that time, while the other statute provides for the appointment of receivers for lands thus sold, covering the same period, and can have no conceivable force or application whatever except as to lands subject to redemption and held under section 767, *supra*.

In our opinion, on the facts shown in this case, the appellee was entitled to the appointment of a receiver. We have

said nothing with reference to the charge of the commission of waste, and what, if any, weight should be given to it, as there is abundant reason for sustaining the action of the trial court without considering that question.

That there may be no misunderstanding of what we decide in this case, we will say that we do not decide that any purchaser at sheriff's sale is, as such purchaser, entitled to the appointment of a receiver. Nor do we decide that, in any case, a judgment debtor is to be disturbed in the actual personal occupancy of land sold at any judicial sale, whether on execution or on decretal order during the year allowed for redemption, as the facts in this case do not require that we decide that question.

We do decide, however, that where lands are sold at a mortgage foreclosure sale, and the mortgage creditor is the purchaser, if he shows that the mortgaged lands are inadequate to secure the debt, that the debtor is insolvent, and that the lands, or a material part of them, are in the actual occupancy of tenants who are to pay rent therefor by a share of such crops as they raise thereon, or otherwise, a court of equity may appoint a receiver to collect the rents and profits accruing from that portion of such lands as are thus occupied by tenants, and hold them to the expiration of the year allowed for redemption, subject to the order of the court, to be paid to the debtor if he redeems, or to the mortgage creditor, if the debtor does not redeem.

The conclusion we thus reach gives full force and effect to all parts of the redemption law, and all parts of the law for the appointment of receivers, disclosing no conflict whatever between the two statutes. We are also, we think, aside from the statute, justified in this conclusion by well-settled and often-adjudicated principles of equity. In this case the trial court instructed the receiver not to disturb the debtors in their occupancy of the residence, and appurtenant out-buildings, and such of the adjacent lands, not exceeding forty acres, as appellants desired to cultivate themselves by their

own labor, and of which they were then in possession as residents. We do not wish to be understood as indicating that the amount of land thus set off to appellants should be taken as a measure of the rights of debtors in such cases. In this case there was controversy as to the quantity of land actually occupied by appellants, and the order made may be assumed to be an adjudication of their actual personal holding. While we wish it expressly understood that we do not decide that the courts may designate any definite quantity of land as proper in all such cases to be set off to debtors, we think that on the facts shown in this case the court seems to have dealt fairly with appellants.

In conclusion we will add, that to give to the redemption law the force and interpretation contended for by appellants will make it, not simply a redemption law, but an exemption law. We do not think the Legislature ever intended it to have this effect. The Constitution of the State provides for the enactment of " wholesome " exemption laws. Acting upon this humane provision of the Constitution, the Legislature has provided that the debtor may have, in proper cases, property to the value of $600 exempt from levy and sale on execution. The amount to be allowed to the debtor as exempt from execution is left solely to the discretion of the Legislature. The courts can neither add to nor take from the amount thus fixed.

We can not think the redemption law was intended to operate as giving an additional exemption. We have nothing in this State corresponding to the homestead law of Iowa and of some other States, and we do not think cases arising under such laws can materially aid in throwing light on this subject. Homestead rights, as secured by these statutes, being in the nature of absolute exemption, there would be good reason for holding that a receiver could not be appointed to interfere with their enjoyment. And this, while not decided by the Supreme Court of Iowa, has been several times suggested by it. *Callanan* v. *Shaw,* 19 Iowa, 183 ;

*Myton* v. *Davenport*, 51 Iowa, 583, and *Paine* v. *McElroy*, 73 Iowa, 81.

There is nothing, however, in these cases in conflict with the conclusion we have reached in this case. If we were to give to the redemption law the effect contended for by appellant, it would be equivalent to giving to appellant an additional exemption of $1,800 to $2,000.

We think the circuit court did not err, and its judgment is affirmed, with costs.

Filed March 17, 1891; petition for a rehearing overruled Sept. 24, 1891.

## DISSENTING OPINION.

ELLIOTT, J.—I can not assent to the conclusion that where mortgaged property is not of value sufficient to satisfy the judgment embodied in a decree of foreclosure the mortgagee may, upon showing that fact, have a receiver appointed to collect the rent during the year allowed for redemption, for I think that the mere fact that the mortgaged property is not of value sufficient to satisfy the judgment does not authorize the appointment of a receiver. I do not doubt that there may be cases where a receiver can be appointed, but I do believe that to justify the exercise of the extraordinary power of seizing property by the appointment of a receiver, something more than the bare inadequacy of the mortgagee's security must be shown. I believe that the conclusion that the owner may be turned out of possession and a receiver put in solely and simply because the mortgaged property is not of sufficient value to pay the judgment, involves the destruction of our humane and beneficial redemption law.

Our system of redemption from judicial sales is the creature of statute, and to ascertain the rights of those who buy at such sales, as well as the rights of those whose property is sold, the courts must take the law as it is written. Omissions can not be supplied by adding provisions, nor can the courts take from the statute any material provision.

The law as it came from the Legislature is to be interpreted and enforced by the judiciary, but it can not be changed. It is, to be sure, entirely proper to construe the statute in the light of the principles of jurisprudence, but the positive written law can not be borne down by any general rule of the unwritten law. As the redemption system is statutory and is radically•different from any known to the unwritten law, either as administered by courts of chancery or by the common law tribunals, no great light is thrown upon the subject of redemption from judicial sales by the decisions of such courts upon general principles of equity or law.

Our statute books show that changes have been made from time to time in the system of redemption from judicial sales. Each and every change has been in the direction of liberalizing the debtor's right to redeem.

Assuming, as it seems just to do, that our system is statutory, that the changes made indicate the legislative purpose to augment, and not diminish, the right of the debtor, the conclusion must be that a provision giving the debtor possession for the redemption year means possession in all the term implies. It means that the debtor shall enjoy all the incidents of an owner, and enjoy them unmolested and undisturbed by a receiver, or by any one else. It is impossible to restrict the meaning of the word " possession " to a mere *pedis possessio,* without doing violence to plain and settled rules. In language as plain and explicit as ever was employed it is declared that the debtor shall have possession for one year after the sale : These are the words of the statute : " The owner of the real estate, or interest therein, sold as aforesaid, shall be entitled to the possession of the same for one year from the date of sale." There is nothing for the courts to do save give effect to the words of the law, for there is neither ambiguity nor obscurity.

The import of the words is unmistakable and the purpose of the Legislature evident. What was meant, and what is

said, is, that the owner shall have possession for one year, and, if this be true, it is absolutely impossible that possession can be wrested from him by a receiver.   Either the owner is entitled to possession as owner, or he is not entitled to possession at all.   If he is entitled to possession as owner, all the incidents of that possession attach.   That he is entitled to possession as owner is clear, for in no other possible capacity can he retain possession ; hence he has all the incidents of an owner in possession of land.   If he does possess all such incidents, then it is clear that neither by the appointment of a receiver nor in any other mode can he be stripped of them.   Owning all the incidents, he can not be made to account for rents and profits, inasmuch as no owner can be compelled to do this where the law does not exact it. Under former statutes the owner was bound to account for rents and profits ; under the present he is not.   As he is not bound to account, there is no reason for appointing a receiver to take what the owner is entitled to receive.   Whether, at the end of the redemption year, accumulated rents may be subjected to the payment of the unsatisfied part of a judgment or decree is not the question in this case ; the question here is, can the owner be put out of possession and a receiver put in ?   Until the redemption year expires no rent is, or can be, due from the owner, and there is nothing for a receiver to collect.

It comes at last to this, shall the statute which explicitly gives the owner possession be narrowed to mean that he shall have possession only where a court does not see fit to appoint a receiver at the suit of a mortgagee who alleges that the real estate is not of sufficient value to satisfy the decree ?

The right of a mortgagor is a substantive right and a contract right.   This is the law as long since declared by the Supreme Court of the United States.   *Brine* v. *Insurance Co.,* 96 U. S. 627 ; *Bronson* v. *Kinzie,* 1 How. 311. Affirming this rule and yielding to its force, it was decided in the case of *Mutual L. Ins. Co.* v. *Union Mills, etc., Co.,* 3 Lawyers'

Rep. Ann. 90, that a receiver could not be appointed where the statute gives the mortgagor the right to possession. In *Teal* v. *Walker*, 111 U. S. 242, it was held that where there is a right of possession in the mortgagor it absolutely establishes the rule that he is entitled to rents and profits. This general doctrine was, to some extent at least, sanctioned in *Favorite* v. *Deardorff*, 84 Ind. 555. It is entirely safe, therefore, to affirm that the Legislature meant to create a substantive property right. That its intention was clearly and appropriately expressed there can be no doubt. As a substantive right was vested in the owner by express statute, it can neither be divested nor impaired.

Assuming, upon the strength of the arguments and authorities adduced, that a substantive right was vested in the owner, it must follow that the Legislature had a definite object in view in vesting the right. If that object can be ascertained, the courts must exert their power to accomplish it. A right created as that of the owner is created, can not be made a barren one by judicial decisions, since that would defeat the object the Legislature intended to accomplish. The right created by the statute is not a mere nominal one; it is, on the contrary, a substantial and fruitful right. It was created to prevent the debtor from being put out of possession during the year for redemption, and to enable him to enjoy all the fruits arising from the right of an owner in possession. Two leading purposes, at least, were intended to be given effect: First. That the creditor should be compelled to bid the full value of the mortgaged property and not fall upon other property of the debtor to satisfy the unpaid part of the judgment. *Horn* v. *Indianapolis Nat'l Bank*, 125 Ind. 381; *Hervey* v. *Krost*, 116 Ind. 268. Second. To assist the debtor in raising means to effect a redemption. *Bryson* v. *McCreary*, 102 Ind. 1. But whatever may be the incidental purpose of the act this much is certain, the Legislature has in strong and clear words declared that the owner shall have possession for one year after the sale, and

this declaration was made in a statute directed to, and concentrated upon, the special subject of redemption from judicial sales.

The provision in our statute placing the right of possession in the owner was enacted after many experiments had been tried and many decisions rendered, so that it is to be regarded as the result of careful deliberation, and as the final legislative conclusion. The change made by the act of 1881 takes the ground away from some of the decisions and indicates, as has been shown, a purpose to liberalize and broaden the rights of the owners. Even prior to the change wrought by that act there was conflict upon the question of a right to a receiver, and, certainly, the present statute has augmented the owner's right. Redemption statutes are to be liberally construed in favor of the debtor. *Davis* v. *Rupe,* 114 Ind. 588. The statute of 1881 can not be given a liberal construction and it still be held that the possession of the owner may be made to yield to that of a receiver. To appoint a receiver would be, as said in *Sheeks* v. *Klotz,* 84 Ind. 471, "in violation of the spirit and letter of the statute providing for redemption." Other courts have asserted or indicated a doctrine which is here of great force, inasmuch as they have said that to appoint a receiver is to give the creditor property the law does not entitle him to obtain. *Hoge* v. *Hollister,* 8 Bax. (Tenn.) 533; *Callanan* v. *Shaw,* 19 Iowa, 183; *Myton* v. *Davenport,* 51 Iowa, 583; *Goodhue* v. *Daniels,* 54 Iowa, 19; *Paine* v. *McElroy,* 73 Iowa, 81. If the creditor is allowed to seize the rents through the medium of a receiver, he obtains what the law intends the owner shall receive and enjoy. If the rental value of land should be but fifty dollars per annum, it seems quite clear that it could not be taken from the owner, and the principle must be the same although the rental value may chance to be a great deal more. If the land should comprise one acre only, that one acre could not be wrested from the owner's possession, and the principle must be the

same whether there are many acres or no more than one. If the question stood on the redemption statute alone it would be entirely free from difficulty and clear of doubt. The doctrine maintained by me does not give the redemption statute the effect of an exemption law, for it concedes that if the rents at the expiration of a year exceed the amount of the exemption they may be reached by legal process, but it does affirm that the rent can not be collected by a receiver during the year. At the end of the year, in cases where there is no redemption, the accumulated rents may be reached by a creditor, not because they are rents, but because the amount over and above the sum allowed the debtor by the exemption law is property subject to execution. In my view there is and can be nothing due or owing from the owner until after the year for redemption has expired, but if at the end of the year there is money or property, although derived from the mortgaged land, subject to execution, the creditor may reach it in the appropriate proceeding.

The only possible doubt that can arise grows out of a provision found in a statute which enumerates the cases in which a receiver may be appointed, but this doubt vanishes upon analysis and investigation.

The general statute regarding receivers can not displant or overthrow the plain and unequivocal provisions of the redemption statute. For this conclusion three reasons may be assigned :

*First.* The statute respecting receivers is a general one, affecting matters of procedure, while the redemption statute is a special one, creating an essential property right, and the law is that the provisions of a special statute will prevail over those of a general statute. .

*Second.* The provisions of the statute respecting receivers may be harmonized with the redemption law without doing violence to its language.

*Third.* If the two statutes can not be harmonized, the redemption law is the later, and must prevail.

The first of these reasons needs no elaboration. The second and third will be briefly considered.

The statute respecting receivers designates the cases in which a receiver may be appointed, and one of the enumerated cases is designated in these words: " To protect or preserve, during the time allowed for redemption, any real estate or interest therein sold on execution or order of sale, and to secure to the person entitled thereto the rents and profits thereof." Section 1222, R. S. 1881.

It is quite clear that the first clause of this sentence only embraces cases where some tortious act is threatened or done which may cause injury to the property, or which may put it in danger. By no possible construction can that clause be so extended as to embrace a case where the owner simply retains possession, and is guilty of no wrong, for its language is too plain to admit of doubt. It is obvious, therefore, that if the redemption statute must go down at all it must go down because of the last clause of the provision, which reads, " and to secure to the person entitled thereto the rents and profits thereof." But that clause does not create a new class of cases, or refer to a class of cases different from those designated in the first clause of the sentence. The meaning is, that where there is a tortious act likely to injure or endanger the property, a receiver may be appointed to take possession, collect the rents and ultimately pay them to the party " entitled thereto." Even if it be true that a broader meaning can be given to the single clause, still, it does not follow that a receiver may be appointed and possession be taken from an owner who does no tortious act, but simply remains in possession of the land. This must be true, because it is settled that the owner is entitled to all rents and profits during the redemption year (*Sheeks* v. *Klotz, supra ; Ridgeway* v. *First Nat'l Bank,* 78 Ind. 119 ; *Adams* v. *Glidden,* 111 Ind. 528 ; *Taylor* v. *Morgan,* 95 Ind. 456), and if

the owner is entitled to the rent the mortgagee can not be the person "entitled thereto" within the meaning of the statute. But, conceding that the mortgagee may ultimately reach the rents, he can not do so until the year has expired, and it becomes certainly known that there will be no redemption ; for it is elementary law that where there is an express contract to pay rent none can be recovered until the expiration of the term unless it is otherwise stipulated in the contract. The utmost that can be conceded is that at the end of a year the mortgagee may reach the rent, but this concession will not authorize the conclusion that a receiver may be appointed at the beginning of the year in a case where the owner simply retains possession, neither threatening to do a tortious act nor doing one. The rule is well settled that until a mortgage debt is due a receiver will not be appointed unless some wrong is shown endangering the security, and certainly an owner in possession does not owe rent until the end of the redemption year. But some of the concessions suggested are very much broader than a mortgagee is entitled to have made, for it is only where there is some tortious act that an owner can be turned out of possession and a receiver put in.

It is a mistake to suppose that there are no cases except those in which trespass or waste is committed to which the provision quoted from the statute, respecting receivers, can apply. There are such cases, as for instance where the owner leases the property for a purpose that endangers its safety, or so uses it himself as to put it in peril. There are other cases where the statute will apply, as, for instance, where the owner suffers the property to be sold for assessments or taxes. Cases of waste and trespass, as well as cases of the character indicated by our illustrations, were the cases contemplated by the Legislature, for it is neither just nor consistent with the rules of construction to hold that it was the legislative intention to break down the strong, explicit, and particular provision enacted in favor of the owner. Both acts can be

·given effect upon the theory outlined in the preceding pages, and hence both can be upheld.

It is unnecessary to dwell upon the third reason stated in support of the conclusion that a receiver can not be appointed in such a case as this. The redemption act is the later act, and although the two acts were passed at the same session, it must prevail, if there is an irreconcilable conflict. If the provision of the redemption act giving the owner possession must fall, it will be for the sole reason that a single clause of a single subdivision of a single section is strong enough to warrant the conclusion that a mortgagee may secure a receiver in a case where the owner, free from fraud or positive wrong, simply remains in possession, as the statute says he may do.

If a receiver can be appointed in the case of a sale on a decree, one can be appointed in the case of a sale on execution, for the statute joins the two things together so that they can not be severed without legislation. These are its words: "Real estate sold on execution or order of sale." No distinction is made by the Legislature between sales on executions and sales on decrees of foreclosure, and the courts have no power to make any.

The doctrine of the principal opinion, carried to its logical results, will completely overthrow the redemption statute.

MILLER, J., concurs in the foregoing opinion.

Filed March 17, 1891.